CENTER FOR DISABILITY ACCESS
Ray Ballister, Jr., Esq., SBN 111282
Mark Potter, Esq., SBN 166317
Phyl Grace, Esq., SBN 171771
Dennis Price, SBN 279082
Mail: PO Box 262490
San Diego, CA 92196-2490
Delivery: 9845 Erma Road, Suite 300
San Diego, CA 92131
(858) 375-7385; (888) 422-5191 fax
phylg@potterhandy.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Scott Johnson**,<br><br>     Plaintiff,<br><br>  v.<br><br>**Patricia Guerrero;**<br>**Alberto Guerrero;**<br>**Alicia Guerrero;** and Does 1-10,<br><br>     Defendants. | **Case No**.<br><br><br>**Complaint For Damages And Injunctive Relief For Violations Of:** American's With Disabilities Act; Unruh Civil Rights Act. |

Plaintiff Scott Johnson complains of Patricia Guerrero; Alberto Guerrero; Alicia Guerrero; and Does 1-10 ("Defendants"), and alleges as follows:

**PARTIES:**

1. Plaintiff is a California resident with physical disabilities. Plaintiff is a level C-5 quadriplegic. He cannot walk and also has significant manual dexterity impairments. He uses a wheelchair for mobility and has a specially equipped van.

2. In August 2014, Defendant Patricia Guerrero was the real property owner of the building/parcel located at or about 2251 E. Main Street, Stockton, California.

3. In September 2014, Defendant Patricia Guerrero was the real property owner of the building/parcel located at or about 2251 E. Main Street, Stockton, California.

4. In October 2014, Defendant Patricia Guerrero was the real property owner of the building/parcel located at or about 2251 E. Main Street, Stockton, California.

5. Currently, Defendant Patricia Guerrero is the real property owner of the building/parcel located at or about 2251 E. Main Street, Stockton, California.

6. In August 2014, Defendant Alberto Guerrero was a business owner of Tacos El Grullense, located at or about 2251 E. Main Street, Stockton, California ("Tacos El Grullense").

7. In September 2014, Defendant Alberto Guerrero was a business owner of Tacos El Grullense.

8. In October 2014, Defendant Alberto Guerrero was a business owner of Tacos El Grullense.

9. Currently, Defendant Alberto Guerrero is a business owner of Tacos El Grullense.

10. In August 2014, Defendant Alicia Guerrero was a business owner of Tacos El Grullense.

11. In September 2014, Defendant Alicia Guerrero was a business owner of Tacos El Grullense.

12. In October 2014, Defendant Alicia Guerrero was a business owner of Tacos El Grullense.

13. Currently, Defendant Alicia Guerrero is a business owner of Tacos El Grullense.

Complaint

14. Plaintiff does not know the true names of Defendants, their business capacities, their ownership connection to the property and business, or their relative responsibilities in causing the access violations herein complained of, and alleges a joint venture and common enterprise by all such Defendants. Plaintiff is informed and believes that each of the Defendants herein, including Does 1 through 10, inclusive, is responsible in some capacity for the events herein alleged, or is a necessary party for obtaining appropriate relief. Plaintiff will seek leave to amend when the true names, capacities, connections, and responsibilities of the Defendants and Does 1 through 10, inclusive, are ascertained.

**JURISDICTION & VENUE:**

15. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 1343(a)(3) & (a)(4) for violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq.

16. Pursuant to supplemental jurisdiction, an attendant and related cause of action, arising from the same nucleus of operative facts and arising out of the same transactions, is also brought under California's Unruh Civil Rights Act, which act expressly incorporates the Americans with Disabilities Act.

17. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) and is founded on the fact that the real property which is the subject of this action is located in this district and that Plaintiff's cause of action arose in this district.

**FACTUAL ALLEGATIONS:**

18. Tacos El Grullense is a facility open to the public, a place of public accommodation, and a business establishment.

19. Parking is one of the facilities, privileges, and advantages offered by Defendants to patrons of Tacos El Grullense.

20. In August 2014, there was 1 parking space at Tacos El Grullense marked and reserved as van accessible.

21. In August 2014, Defendants failed to maintain the van accessible parking space in compliance with the Americans with Disabilities Act Accessibility Guidelines (ADAAG).

22. In August 2014, the van accessible parking space measured less than 132 inches in width.

23. In August 2014, the access aisle adjacent to the van accessible parking space measured less than 96 inches in width.

24. In August 2014, the van accessible parking space measured less than 216 inches in length.

25. In August 2014, the access aisle adjacent to the van accessible parking space measured less than 216 inches in length.

26. In August 2014, the van accessible parking space did not have the required tow-away signage.

27. In August 2014, the access aisle adjacent to the standard disabled parking space did not have the required "NO PARKING" lettering.

28. In September 2014, there was 1 parking space at Tacos El Grullense marked and reserved as van accessible.

29. In September 2014, Defendants failed to maintain the van accessible parking space in compliance with ADAAG.

30. In September 2014, the van accessible parking space measured less than 132 inches in width.

31. In September 2014, the access aisle adjacent to the van accessible parking space measured less than 96 inches in width.

32. In September 2014, the van accessible parking space measured less than 216 inches in length.

33. In September 2014, the access aisle adjacent to the van accessible

Complaint

parking space measured less than 216 inches in length.

34. In September 2014, the van accessible parking space did not have the required tow-away signage.

35. In September 2014, the access aisle adjacent to the standard disabled parking space did not have the required "NO PARKING" lettering.

36. In October 2014, there was 1 parking space at Tacos El Grullense marked and reserved as van accessible.

37. In October 2014, Defendants failed to maintain the van accessible parking space in compliance with the ADAAG.

38. In October 2014, the van accessible parking space measured less than 132 inches in width.

39. In October 2014, the access aisle adjacent to the van accessible parking space measured less than 96 inches in width.

40. In October 2014, the van accessible parking space measured less than 216 inches in length.

41. In October 2014, the access aisle adjacent to the van accessible parking space measured less than 216 inches in length.

42. In October 2014, the van accessible parking space did not have the required tow-away signage.

43. In October 2014, the access aisle adjacent to the standard disabled parking space did not have the required "NO PARKING" lettering.

44. Currently, there is 1 parking space at Tacos El Grullense marked and reserved as van accessible.

45. Currently, Defendants have failed to maintain the van accessible parking space in compliance with the ADAAG.

46. Currently, the van accessible parking space measures less than 132 inches in width.

47. Currently, the access aisle adjacent to the van accessible parking space

Complaint

measures less than 96 inches in width.

48. Currently, the van accessible parking space measures less than 216 inches in length.

49. Currently, the access aisle adjacent to the van accessible parking space measures less than 216 inches in length.

50. Currently, the van accessible parking space does not have the required tow-away signage.

51. Currently, the access aisle adjacent to the standard disabled parking space does not have the required "NO PARKING" lettering.

52. Paths of travel are another one of the facilities, privileges, and advantages offered by Defendants to patrons of Tacos El Grullense.

53. In August 2014, there was no clearly marked path of travel from the parking to the entrance.

54. In September 2014, there was no clearly marked path of travel from the parking to the entrance.

55. In October 2014, there was no clearly marked path of travel from the parking to the entrance.

56. Currently, there is no clearly marked path of travel from the parking to the entrance.

57. Transaction counters are another one of the facilities, privileges, and advantages offered by Defendants to patrons of Tacos El Grullense.

58. In August 2014, the transaction counter was more than 36 inches in height.

59. In August 2014, there was no lowered, 36-inch or lower portion of the transaction counter available for persons with disabilities.

60. In September 2014, the transaction counter was more than 36 inches in height.

61. In September 2014, there was no lowered, 36-inch or lower portion of

Complaint

the transaction counter available for persons with disabilities.

62. In October 2014, the transaction counter was more than 36 inches in height.

63. In October 2014, there was no lowered, 36-inch or lower portion of the transaction counter available for persons with disabilities.

64. Currently, the transaction counter is more than 36 inches in height.

65. Currently, there is no lowered, 36-inch or lower portion of the transaction counter available for persons with disabilities.

66. Dining in is one of the facilities, privileges, and advantages offered by Defendants to patrons of Tacos El Grullense.

67. In August 2014, food or drink was served at a counter for consumption by customers either seated on stools or standing at the counter, but there was no portion of the counter that was 34 inches in height or less and no accessible tables in the same area.

68. In August 2014, there was no wheelchair accessible table in the main dining area because all of the tables were fixed booths.

69. In August 2014, any wheelchair user would have had to sit at the end of the booths, which would then have caused an obstruction as defined by the California Building Code and a "barrier" as that term is defined under the ADA by reducing the clear passage width.

70. In September 2014, food or drink was served at a counter for consumption by customers either seated on stools or standing at the counter, but there was no portion of the counter that was 34 inches in height or less and no accessible tables in the same area.

71. In September 2014, there was no wheelchair accessible table in the main dining area because all of the tables were fixed booths.

72. In September 2014, any wheelchair user would have had to sit at the end of the booths, which would then have caused an obstruction as defined by

Complaint

the California Building Code and a "barrier" as that term is defined under the ADA by reducing the clear passage width.

73. In October 2014, food or drink was served at a counter for consumption by customers either seated on stools or standing at the counter, but there was no portion of the counter that was 34 inches in height or less and no accessible tables in the same area.

74. In October 2014, there was no wheelchair accessible table in the main dining area because all of the tables were fixed booths.

75. In October 2014, any wheelchair user would have had to sit at the end of the booths, which would then have caused an obstruction as defined by the California Building Code and a "barrier" as that term is defined under the ADA by reducing the clear passage width.

76. Currently, food or drink is served at a counter for consumption by customers either seated on stools or standing at the counter, but there is no portion of the counter that is 34 inches in height or less and no accessible tables in the same area.

77. Currently, there is no wheelchair accessible table in the main dining area because all of the tables are fixed booths.

78. Currently, any wheelchair user would have to sit at the end of the booths, which would then cause an obstruction as defined by the California Building Code and a "barrier" as that term is defined under the ADA by reducing the clear passage width.

79. Restrooms are another one of the facilities, privileges and advantages offered by Defendants to patrons of Tacos El Grullense.

80. In August 2014, the toilet paper dispenser was not mounted below the grab bars and within 7-12 inches of the front end of the toilet seat.

81. In August 2014, the flush control was not mounted on the wide or open side of the toilet.

Complaint

82. In September 2014, the toilet paper dispenser was not mounted below the grab bars and within 7-12 inches of the front end of the toilet seat.

83. In September 2014, the flush control was not mounted on the wide or open side of the toilet.

84. In October 2014, the toilet paper dispenser was not mounted below the grab bars and within 7-12 inches of the front end of the toilet seat.

85. In October 2014, the flush control was not mounted on the wide or open side of the toilet.

86. Currently, the toilet paper dispenser is not mounted below the grab bars and within 7-12 inches of the front end of the toilet seat.

87. Currently, the flush control is not mounted on the wide or open side of the toilet.

88. Plaintiff visited Tacos El Grullense in August 2014.

89. Plaintiff visited Tacos El Grullense in September 2014.

90. Plaintiff visited Tacos El Grullense in October 2014.

91. The plaintiff personally encountered these violations and they denied him full and equal access.

92. These barriers caused Plaintiff great difficulty and frustration.

93. Plaintiff would like to return and patronize Tacos El Grullense but will be deterred from visiting until the defendants cure the violations.

94. The violations identified above are easily removed without much difficulty or expense. They are the types of barriers identified by the Department of Justice as presumably readily achievable to remove and, in fact, these barriers are readily achievable to remove. Moreover, there are numerous alternative accommodations that could be made to provide a greater level of access if complete removal were not achievable.

95. Additionally, on information and belief, the plaintiff alleges that the failure to remove these barriers was intentional because: (1) these particular

Complaint

barriers are intuitive and obvious; (2) the defendants exercised control and dominion over the conditions at this location and, therefore, the lack of accessible facilities was not an "accident" because, had the defendants intended any other configuration, they had the means and ability to make the change.

96. Given the obvious and blatant violation, the plaintiff alleges, on information and belief, that there are other violations and barriers on the site that relate to his disability. Plaintiff will amend the Complaint to provide proper notice regarding the scope of this lawsuit once he conducts a site inspection. However, please be on notice that the plaintiff seeks to have all barriers related to his disability remedied. See *Doran v. 7-11*, 506 F.3d 1191 (9th Cir. 2008) (holding that once a plaintiff encounters one barrier at a site, he can sue to have all barriers that relate to his disability removed regardless of whether he personally encountered them).

97. Plaintiff is and has been deterred from returning and patronizing Tacos El Grullense because of his knowledge of the illegal barriers that exist. Plaintiff will, nonetheless, return to the business to assess ongoing compliance with the ADA and will return to patronize Tacos El Grullense as a customer once the barriers are removed.

**I. FIRST CAUSE OF ACTION: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990** (On behalf of Plaintiff and against all Defendants.) (42 U.S.C. section 12101, et seq.)

98. Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

99. Under the ADA, it is an act of discrimination to fail to ensure that the privileges, advantages, accommodations, facilities, goods and services of any

Complaint

place of public accommodation is offered on a full and equal basis by anyone who owns, leases, or operates a place of public accommodation. See 42 U.S.C. § 12182(a). Discrimination is defined, inter alia, as follows:

    a. A failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the accommodation would work a fundamental alteration of those services and facilities. 42 U.S.C. § 12182(b)(2)(A)(ii).

    b. A failure to remove architectural barriers where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). Barriers are defined by reference to the ADAAG, found at 28 C.F.R., Part 36, Appendix "D."

    c. A failure to make alterations in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs or to ensure that, to the maximum extent feasible, the path of travel to the altered area and the bathrooms, telephones, and drinking fountains serving the altered area, are readily accessible to and usable by individuals with disabilities. 42 U.S.C. § 12183(a)(2).

100. Any business that provides parking spaces must provide accessible parking spaces. 1991 Standards § 4.1.2(5); 2010 Standards § 208. Parking spaces shall be 96 inches wide minimum and van parking spaces shall be 132 inches wide minimum, shall be marked to define the width, and shall have an adjacent access aisle complying with 502.3. 2010 Standards § 502.2.

Complaint

101. Here, the failure to provide a van accessible space at least 132 inches in width is a violation of the ADA.

102. Each accessible parking stall must have an access aisle adjacent to it. Standard accessible parking stalls can have a 60 inch wide access aisle while van accessible stalls must have a 96 inch wide access aisle. 1991 Standards § 4.1.2(5)(a)&(b) and 2010 Standards § 502.2.

103. Here, the failure to provide an access aisle at least 96 inches in width is a violation of the ADA.

104. Any business that provides parking spaces must provide accessible parking spaces. 1991 Standards § 4.1.2(5); 2010 Standards § 208. To qualify as a reserved handicap parking space, the space must be properly marked and designated. Under the ADA, the method, color of marking, and length of the parking space are to be addressed by state or local laws or regulations. See 36 C.F.R., Part 1191, § 502.3.3. Under the California Building Code, to properly and effectively reserve a parking space for persons with disabilities, each parking space must be at least 216 inches in length. CBC § 11B-502.2. The access aisle must extend the full length of the parking space(s) it serves. 2010 Standards § 502.3.2. Under the California Building Code, to properly and effectively reserve a parking space for persons with disabilities, each such space must be identified with a reflectorized sign permanently posted adjacent to and visible from each stall or space. CBC § 1129B.4. The sign must consist of the International Symbol of Accessibility (♿) in white on a blue background. *Id.* It cannot be smaller than 70 square inches and must be mounted so that there is a minimum of 80 inches from the bottom of the sign to the parking space. *Id.* Signs must be posted so that they cannot be obscured by a vehicle parking in the space. *Id.* An additional sign or additional language below the symbol of accessibility must state, "Minimum Fine $250" to ensure that the space remains available for persons with

Complaint

disabilities. *Id.* Another sign must be posted in a conspicuous place at the entrance to the parking lot or immediately adjacent to each handicap parking space, with lettering 1 inch in height, that clearly and conspicuously warn that unauthorized vehicles parking in the handicap parking spaces can be towed at the owner's expense. *Id.* Additionally, the surface of the handicap parking stall must have a profile view of a wheelchair occupant (♿) that is 36 inches by 36 inches. *Id.* And the surface of the access aisle must have a blue border. CBC § 1129B.3. The words "NO PARKING" in letters at least a foot high must be painted on the access aisle. *Id.*

105. Here, the failure to provide a disabled parking space no less than 216 inches in length is a violation of the ADA.

106. Here, the failure to provide an access aisle no less than 216 inches in length is a violation of the ADA.

107. Here, the failure to post the required fine signage is a violation of the ADA.

108. Here, the failure to post the required tow-away signage is a violation of the ADA.

109. Here, the failure to mark the access aisle with the required "NO PARKING" lettering is a violation of the ADA.

110. Here, the parking simply failed to comply.

111. Any business that provides parking spaces must provide accessible parking spaces. 1991 Standards § 4.1.2(5); 2010 Standards § 208. One in every eight of those accessible parking spaces but not less than one must be a "van" accessible parking space, *i.e.*, having an eight foot access aisle. 1991 Standards § 4.1.2(5)(b). Under the 2010 Standards, one in every six accessible parking spaces must be van accessible. 2010 Standards § 208.2.4.

112. Here, the lack of a van parking space is a violation of the ADA.

113. Under the ADA, there must be an accessible route within the

Complaint

boundary of the site from the accessible parking to the accessible building entrance they serve. 1991 Standards § 4.3.2(1); 2010 Standards § 206.2. The accessible route shall, to the maximum extent feasible, coincide with the route for the general public. *Id.* The accessible route must be at least 36 inches in width except at doors. 1991 Standards § 4.3.3; 2010 Standards § 403.5.1.

114.     Here, the failure to provide an accessible path of travel from the handicap parking space to the entrance is a violation of the ADA.

115.     In areas used for transactions where counters have cash registers and are provided for sales or distribution of goods or services to the public, at least one of each type shall have a portion of the counter which is at least 36 inches in length with a maximum height of 36 inches above the floor. 1991 Standards § 7.2(1). Under the 2010 Standards, where the approach to the sales or service counter is a parallel approach, such as in this case, there must be a portion of the sales counter that is no higher than 36 inches above the floor and 36 inches in width and must extend the same depth as the rest of the sales or service counter top. 2010 Standards § 904.4 & 904.4.1.

116.     Here, no such accessible transaction counter has been provided in violation of the ADA.

117.     Where food or drink is served at counters exceeding 34 inches in height for consumption by customers seated on stools or standing at the counter, a portion of the main counter which is 60 inches in length minimum shall be provided that is no higher than 34 inches above the floor or service shall be available at accessible tables within the same area. 1991 Standards § 5.2 and 4.32; 2010 Standards § 226.1.

118.     Here the failure to provide an accessible dining counter or accessible tables in the vicinity is a violation of the ADA.

119.     Under the ADA, a 36 inch clear access aisle must be maintained between the edges of accessible fixed tables. 1991 Standards § 5.3. Likewise,

Complaint

section 1017 of the California Building Code mandates that the required width of aisles remain unobstructed. Here, the defendants do not provide wheelchair accessible tables. Their tables are all fixed booths. Although a wheelchair user could conceivably pull up to the end of the booth, he would then be parked in the circulation path (aisles) and would act as an obstruction, causing the defendants to violate both section 1017 of the California Building Code and section 5.3 of the 1991 Standards because the defendants would then fail to have a clear and unobstructed access aisle. Forcing a wheelchair user to block the accessible path of travel and access aisle in order to enjoy using a table does not comply with either the federal access standards or the California Building Code.

120. The toilet paper dispenser must be located on the wide wall, below the grab bar and within 12 inches of the front edge of the toilet seat or, if the 2010 Standards govern, then within 7-9 inches of the front edge of the toilet seat. 1991 Standards § 4.17.3; 2010 Standards § 604.7.

121. Here, the failure to properly locate the toilet paper dispenser is a violation of the ADA.

122. Flush controls for accessible toilets must be mounted on the open or wide side of the toilet, *i.e.*, not the side nearest the adjacent side wall. 1991 Standards § 4.16.

123. Here, the failure to properly locate the flush control is a violation of the ADA.

~~123.~~124.

~~124.~~125. A public accommodation must maintain in operable working condition those features of its facilities and equipment that are required to be readily accessible to and usable by persons with disabilities. 28 C.F.R. § 36.211(a).

~~125.~~126. Here, the failure to ensure that the accessible facilities were

Complaint

available and ready to be used by the plaintiff is a violation of the ADA.

~~126.~~ 127. Given its location and options, Tacos El Grullense is a location that the plaintiff will continue to desire to patronize but he has been and will continue to be discriminated against due to the lack of accessible facilities.

**II. SECOND CAUSE OF ACTION: VIOLATION OF THE UNRUH CIVIL RIGHTS ACT** (On behalf of Plaintiff and against all Defendants.) (Cal. Civ. Code § 51-53.)

~~127.~~ 128. Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

~~128.~~ 129. Because the defendants violated the plaintiff's rights under the ADA, they also violated the Unruh Civil Rights Act and are liable for damages. (Cal. Civ. Code § 51(f), 52(a).)

~~129.~~ 130. Because the violation of the Unruh Civil Rights Act resulted in difficulty, discomfort, or embarrassment for the plaintiff, the defendants are also each responsible for statutory damages, *i.e.,* a civil penalty. (Cal. Civ. Code § 55.56(a)-(c).)

~~130.~~ 131. Although the plaintiff was markedly frustrated by facing discriminatory barriers and this frustration possibly qualifies as an emotional distress injury, even manifesting itself with minor and fleeting physical symptoms, the plaintiff does not value this very modest frustration and physical personal injury greater than the amount of the statutory damages.

Complaint

**PRAYER**:

Wherefore, Plaintiff prays that this Court award damages and provide relief as follows:

1. For injunctive relief, compelling Defendants to comply with the Americans with Disabilities Act and the Unruh Civil Rights Act. Note: the plaintiff is not invoking section 55 of the California Civil Code and is not seeking injunctive relief under the Disabled Persons Act at all.

2. Damages under the Unruh Civil Rights Act, which provides for actual damages and a statutory minimum of $4,000.

3. Reasonable attorney fees, litigation expenses and costs of suit, pursuant to 42 U.S.C. § 12205; and Cal. Civ. Code §§ 52.

Dated: February 25, 2016            CENTER FOR DISABILITY ACCESS

By: _____
Mark Potter, Esq.
Attorneys for Plaintiff

Complaint